UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALFRED FRANCOIS,**  Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **No. 11-2956** |
| **DIAMOND OFFSHORE COMPANY, et al.,**  Defendants | **SECTION "E"** |

### ORDER AND REASONS

Before the Court is the motion *in limine* filed by Defendants, Diamond Offshore Company, Diamond Offshore Drilling, Inc., Diamond Offshore Management Company, and Diamond Offshore Services Company (together, "Diamond").[1]  Diamond seeks to exclude certain testimony by Plaintiff's expert witness, E. Geoffrey Webster ("Webster"). Plaintiff, Alfred Francois ("Plaintiff"), opposes Diamond's motion.[2]  For the following reasons, Diamond's motion is **GRANTED** as set forth below.

### *Background*

Plaintiff, a crane operator and deck supervisor on the M/V OCEAN TOWER (the "vessel"), was working aboard the vessel on April 10, 2009, when he fell through a missing section of walkway grating. As a result of the fall, he suffered injuries to his knee, ribs, and back.  According to Plaintiff, the missing grating had been dislodged by rough sea conditions while the vessel was being towed the previous day, April 9, 2009. Though members of the vessel's crew allegedly were aware that the section of grating was missing,

---

[1] R. Doc. 30.

[2] R. Docs. 31 and 34.

1

Plaintiff avers that portion of the walkway had not been barricaded off or replaced. Diamond owns and operates the vessel.

Plaintiff retained Webster to render an expert opinion on the cause of his accident. Webster's report outlines the results of his investigation and his professional opinions, namely that Diamond and the vessel's crew – not Plaintiff – were responsible for the accident. Diamond seeks to exclude any of Webster's testimony that contains legal conclusions, any testimony regarding hot/cold work permits and housekeeping guidelines because such regulations are irrelevant, and any testimony regarding OSHA regulations because such regulations are inapplicable.[3]

## *Law and Analysis*

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue," so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Courts, as "gatekeepers," are tasked with making a preliminary assessment whether expert testimony is both reliable and relevant. See *Pipiton v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509

---

[3] Diamond does not affirmatively argue in its motion that it seeks to have Webster's actual report excluded. Nevertheless, Diamond's motion and supporting memorandum are entitled "Motion *in Limine* to Exclude Expert Testimony and Report of Geoff Webster" and "Memorandum in Support of Motion *in Limine* to Exclude Expert Testimony and Report of Geoff Webster," respectively. The Court, out of an abundance of caution, observes that, generally, an expert report is considered hearsay and thus, standing alone, is inadmissible at trial. *Marquette Transp. Co., Inc. v. Eagle Subaru*, 2010 WL 1558921, at *3 (E.D. La. Apr. 15, 2010) (Vance, J.). Plaintiff recognizes that an expert report "itself is inadmissible at trial." R. Doc. 31 at p. 1. Indeed, Plaintiff has not listed Webster's report on his exhibit list. *See* R. Doc. 28. As a result, at this time the Court need not address whether Webster's report itself is admissible because Plaintiff has not indicated he intends to introduce Webster's report into evidence at trial.

U.S. 579, 592-93 (1993)).  A witness's proponent must prove by a preponderance of the evidence that the expert's testimony satisfies Rule 702.  *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

While an expert witness is permitted to give his opinions on an "ultimate issue" of fact, assuming he is qualified to do so, he is not permitted to make credibility determinations or offer conclusions of law.  Fed. R. Evid. 704; *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law . . . nor, may an expert go beyond the scope of his expertise in giving his opinion."); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("Fed. R. Evid. 704 abolished the per se rule against testimony regarding ultimate issues of fact. . . . Rule 704, however, does not open the door to all opinions.").  As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact.  *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

### I.     Legal Conclusions

First, Diamond seeks to preclude any testimony regarding legal conclusions. Diamond submits Plaintiff will offer Webster's testimony not only to inform the jury that Diamond violated its "own safety policies and procedures or various industry and governmental regulations,"[4] but also to give his opinion that this conduct amounted to a breach of the standard of care for maintaining a seaworthy vessel.  Diamond highlights the Executive Summary of Webster's expert report as an overview of the legal conclusions Webster intends to offer.  Among these purported legal conclusions, for example, is

---

[4] R. Doc. 30-1 at p. 4.

Webster's assertion that

> [t]he MODU "OCEAN TOWER" did not meet the standards of care and practice for the maritime industry for a "ship shape vessel" which is a "safe workplace" with safe access and egress, safe walking and working surfaces and a workplace free of recognized hazard.[5]

Plaintiff responds that Webster will testify that Diamond violated its own safety policies and procedures, as well as industry and government regulations, but Webster will not focus on whether Diamond breached the standard of care.[6] Rather, according to Plaintiff, Webster "offers his opinion on whether the crew members acted in accordance with industry standard 'safe [p]ractices' in maintaining a 'ship-shape vessel,'" and that such an opinion constitutes "factual conclusions, not legal ones."[7] While the Court recognizes that distinguishing between admissible testimony regarding the facts of a certain case compared with general practices in the industry, and an inadmissible ultimate legal conclusion that a vessel is unseaworthy, is often a fine line, the Court must make such distinctions. Nevertheless, at this time, the Court cannot do so without a specific line of questioning or testimony before it. The Court reminds Plaintiff that, to the extent Webster seeks to testify as to ultimate legal conclusions, such testimony is inadmissible. *See, e.g.*, *In re Midland Enters.*, 2002 WL 31780156, at *3 (E.D. La. Dec. 11, 2002) (Africk, J.); *Jacobs v. N. King Shipping Co., Ltd.*, 1998 WL 28234, at *2 (E.D. La. Jan. 23, 1998) (Clement, J.). Consequently, with respect to Diamond's argument that Webster, in general,

---

[5] R. Doc. 30-1 at p. 3.

[6] At the final pre-trial conference in this matter on February 14, 2013, Plaintiff's counsel agreed that Webster may not render legal conclusions and averred that Webster will not testify that Diamond breached the standard of care.

[7] R. Doc. 31 at pp. 6-7.

4

should be precluded from rendering any legal conclusions at trial, the motion is **GRANTED**. However, Webster may testify with respect to whether Diamond violated its own rules and regulations.

## II. Hot/Cold Work Permits[8] and Housekeeping Guidelines

Second, Diamond seeks to exclude any testimony regarding Webster's findings regarding permit to work requirements and housekeeping guidelines. With respect to permit requirements, Webster's report states Diamond's regulations require that "[p]rior to undertaking any work, personnel must determine if a permit is required. . . . When a permit is required, no work shall start unless [a list of safety conditions has been satisfied]."[9] The missing grating at issue in this case was dislodged by rough sea conditions as the vessel was being towed. Consequently, Diamond argues, "to suggest that [Diamond's] personnel should have secured a permit before the grating had been swept away makes no sense." Diamond urges the Court to exclude any testimony about hot or cold work permits because "permitting requirements were not triggered in this instance and to aver otherwise would be confusing and misleading to the jury."[10]

With respect to housekeeping guidelines, Webster opines that the "Trier of Fact may conclude that [Diamond] . . . did not measure up to these standards" on the day of the accident.[11] The cited housekeeping guidelines require, *inter alia*, that all "staging,

---

[8] As set forth in Webster's report, "hot work" is work "involving open flames or other sources of ignition, or which may have a potential source of ignition," whereas "cold work" consists of work "that presents significant hazards," such as removal of handrails, deck grating, etc., "but no source of ignition." *See* R. Doc. 30-2 at p. 13.

[9] R. Doc. 30-2 at p. 13.

[10] R. Doc. 30-1 at p. 5.

[11] R. Doc. 30-2 at pp. 23-25.

5

platforms, and other working surfaces and all ramps, stairways, and other walkways must be kept clear of portable tools, materials, and equipment not in use and be promptly cleared of substances which create a tripping or slipping hazard."[12]  Diamond argues that "a plain reading of these rules and regulations firmly establishes that they are meant to alleviate tripping or slipping hazards."[13]  Defendant concludes that, because "Plaintiff did not trip or slip on any substance or equipment in the area," but rather "allegedly fell through grating which had been dislodged by high seas," the housekeeping guidelines "are clearly inapplicable."[14]

Plaintiff did not argue that permitting requirements or housekeeping guidelines are relevant to facts at issue in this case.  Evidence must be relevant to be admissible.  Fed. R. Evid. 402.  The Court has carefully reviewed the sections of Webster's report regarding permits and housekeeping and concludes that evidence regarding permits or housekeeping guidelines is not relevant – that is, such evidence does not have "any tendency to make a fact more or less probable than it would be without the evidence" and does not concern a fact "of consequence in determining the action."  Fed. R. Evid. 401.  Furthermore, Plaintiff has the burden of establishing that its expert witness's testimony is admissible.  *Mathis*, 302 F.3d at 459-60.  Plaintiff has not done so.  As a result, Diamond's motion with respect to permitting requirements and housekeeping guidelines is **GRANTED**.

### III. OSHA Regulations

Finally, Diamond, relying on *Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235

---

[12] R. Doc. 30-2 at p. 24.

[13] R. Doc. 30-1 at p. 5.

[14] R. Doc. 30-1 at p. 5.

(2002), contends that the OSHA regulations Webster cites in his report are inapplicable to the vessel on which Plaintiff was injured. In *Mallard Bay*, the U.S. Supreme Court addressed whether regulations promulgated by the Occupational Safety and Health Administration ("OSHA") in accordance with the Occupational Safety and Health Act of 1970 (the "OSH Act," 29 U.S.C. § 651, *et seq.*) apply to inspected vessels.[15] The *Mallard Bay* Court concluded that, pursuant to a Memorandum of Understanding between OSHA and the U.S. Coast Guard, OSHA "may not enforce the OSH Act with respect to the working conditions of seamen aboard inspected vessels." *Mallard Bay*, 534 U.S. at 743. In essence, the U.S. Coast Guard's regulations pre-empt OSHA's regulations regarding inspected vessels. *Mallard Bay*, 534 U.S. at 743. Diamond argues that the vessel on which Plaintiff was injured is an inspected vessel and, as a result, OSHA regulations are inapplicable and "Webster should not be permitted to address same."[16]

Plaintiff has filed a supplemental memorandum in opposition addressing Diamond's arguments regarding *Mallard Bay*.[17] Plaintiff does not dispute that the vessel at issue is an inspected vessel and thus is within the regulatory purview of the U.S. Coast Guard, not OSHA. Plaintiff admits that U.S. Coast Guard regulations, not OSHA regulations, are applicable to the vessel.[18] Nevertheless, Plaintiff objects to the "blanket exclusion" of

---

[15] An inspected vessel is a vessel that falls within one of the fourteen enumerated vessel categories that are subject to "to comprehensive Coast Guard regulation." *Mallard Bay*, 534 U.S. at 740 (citing 46 U.S.C. § 3301). "[T]he Coast Guard has broad statutory authority to regulate the occupational health and safety of seamen aboard inspected vessels, . . . and it has exercised that authority." *Id.* at 743.

[16] R. Doc. 30-1 at p. 6.

[17] *See* R. Doc. 34.

[18] Plaintiff's counsel confirmed at the final pre-trial conference in this matter on February 14, 2013, that U.S. Coast Guard regulations apply to the vessel.

7

Webster's testimony regarding OSHA regulations. Plaintiff submits that OSHA regulations, even though they do not apply to inspected vessels, are relevant for determining the standard of care and may be considered evidence of Diamond's negligence.

Plaintiff was injured on an inspected vessel. According to Supreme Court precedent, the U.S. Coast Guard has the authority to promulgate safety regulations for inspected vessels and it has done so, thereby pre-empting OSHA regulations. *Mallard Bay*, U.S. at 743. In order for expert testimony regarding alleged regulatory violations to be admissible in this case, Webster must testify about alleged violations of U.S. Coast Guard regulations, *not* OSHA regulations. The Court finds that the probative value of expert testimony about OSHA violations is substantially outweighed by the danger of unfair prejudice, as it would likely mislead the jury. Fed. R. Evid. 401 and 403. Accordingly, Diamond's motion *in limine* with respect to OSHA regulations is **GRANTED**.

**IT IS SO ORDERED.**

New Orleans, Louisiana, this __21st__ day of February, 2013.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**